IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KELLY RAU,                                          :
                                                   :
              Plaintiff,                            :
                                                   :
v.                                                 :   3:14-CV-00479
                                                   :   (JUDGE MARIANI)
ALLSTATE FIRE AND CASUALTY                          :
INSURANCE CO.,                                      :
                                                   :
              Defendants.                           :

## MEMORANDUM OPINION

### I.      Introduction

Presently before the Court is a pending discovery dispute as to whether Plaintiff may

depose Defendant Allstate Insurance Company's claims adjuster. For the reasons that

follow, the Court will allow the deposition to proceed, subject to the qualifications expressed

herein.

### II.     Procedural History

A deposition of Defendant Allstate Insurance Company's claim adjuster had been

scheduled to take place on April 21, 2015. The Defendant objected to that deposition

generally to the scope of the deposition insofar as it related to "Defendant's investigation of

Plaintiff's claim, how Plaintiff's claim was evaluated and the specifics of Defendant's claims

handling procedures." (Def.'s Br. in Supp. of Objections to Proposed Dep., Doc. 25, at 3.)

Defendant argues that, because Plaintiff's Complaint only alleges a claim for Underinsured

Motorist (UIM) coverage and not for bad faith, the claims adjuster's testimony as to how she handled this claim is irrelevant, in addition to possibly constituting protected work product. (*See id.* at 3-4.) In response, Plaintiff's counsel stated that she only intended "to ask the adjuster about the elements of her investigation of the Plaintiff's UIM claim," i.e., to discover "the factual details of Allstate's investigation and evaluation of Ms. Rau's claim." (*See* Pl.'s Letter Br., May 1, 2015, Doc. 24, at 1.) Counsel "conceded that [she] was not permitted to ask Ms. Johnson [i.e., the adjuster] questions pertaining to her mental impressions, conclusions or opinions with respect to Ms. Rau's UIM claim." (*Id.*)

A conference call was held at the request of counsel on the day of the deposition, during which both sides presented their above-stated positions and advanced case law in their support. The Court determined that it could not decide the issues presented without further submissions from counsel. Accordingly, the deposition was postponed and counsel submitted supplemental briefs setting forth their respective positions to this Court. (*See* Docs. 24; 25.) The matter is now ripe for disposition.

## III.   Analysis

### a.   The Deposition May Proceed

In general, the Federal Rules of Civil Procedure provide:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be

2

admissible at the trial if the discovery appears reasonably calculated to lead
to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). "It is well recognized that the federal rules allow broad and liberal

discovery." *Pacitti v. Macy's*, 193 F.3d 766, 766 (3d Cir. 1999).

Defendant cites several cases for the proposition that "[i]nquiries into Defendant's

method of investigating, evaluating and negotiating an underinsured motorist claim, is

clearly outside the scope of relevant evidence in a pure underinsured motorist claim" and is

only appropriate when the Plaintiff has alleged a claim for bad faith. (*See* Doc. 25 at 7-8.)

It is true that Plaintiff's Complaint only appears to allege a breach of contract action.

However, in so doing the Complaint contains allegations that "Defendant has failed

objectively and fairly to evaluate the Plaintiff's claim," (Compl., Doc. 1-2, at ¶ 33); that

"Defendant has failed reasonably to investigate the Plaintiff's claim and such a thorough and

proper inquiry would have revealed that Plaintiff sustained serious injuries," (*id.* at ¶ 35); and

that "[a]s the insurer of the Plaintiff, the Defendant owes a fiduciary, contractual and

statutory obligation to her to investigate, evaluate and negotiate her underinsured motorist

claim in good faith and arrive at a prompt, fair and equitable settlement," (*id.* at ¶ 36).

While these claims do not state a claim for a violation of the bad faith statute, the

Court nonetheless concludes that they sufficiently set forth a claim for a breach of the

common law duty of good faith and fair dealing—which may be understood as part of the

broader breach of contract action—and therefore make her proposed lines of deposition

questioning appropriate and permissible. (*Cf. also* Doc. 24 at 2-3 (invoking doctrine of

3

good faith and fair dealing).) The Pennsylvania "Supreme Court has long recognized that 'the utmost fair dealing should characterize the transactions between an insurance company and the insured.'" *Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1170 (Pa. Super Ct. 2012) (quoting *Dercoli v. Pennsylvania Nat. Mut. Ins. Co.*, 554 A.2d 906, 909 (Pa. 1989)). The "duty of good faith and fair dealing is implicit in an insurance contract," *Simmons v. Nationwide Mut. Ins. Co.*, 788 F. Supp. 2d 404, 408 (W.D. Pa. 2011) (collecting cases), and therefore "acts as a term of the contract, and . . . arises from the contract itself," *Zaloga v. Provident Life & Accident Ins. Co. of Am.*, 671 F. Supp. 2d 623, 630 (M.D. Pa. 2009) (collecting cases). When such a duty can be implied from the contract, it is breached when, *inter alia*, "an insurer refuses to settle a claim that could have been resolved within policy limits without 'a bona fide belief that it has a good possibility of winning.'" *Birth Center v. St. Paul Cos.*, 787 A.2d 376, 379 (Pa. 2001) (quoting *Cowden v. Aetna Cas. & Sur. Co.*, 134 A.2d 223, 229 (Pa. 1957) (internal alterations omitted)).

Most relevant here, an action for bad faith "is distinct from the common law cause of action for breach of the contractual duty of good faith." *Ash v. Continental Ins. Co.*, 932 A.2d 877, 884 (Pa. 2007). The former does not alter or supplant the latter. *See e.g.*, *Birth Center*, 787 A.2d at 389 ("The [bad faith] statute does not reference the common law, does not explicitly reject it, and the application of the statute is not inconsistent with

4

the common law."); *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 236 (3d Cir. 2003) ("[T]he majority opinion and Justice Nigro's concurring opinion in *Birth Center* make clear that [the bad faith statute] does not supply the exclusive cause for action for suing an insurer for breach of the duty to act in good faith and make clear that an insurer's bad faith refusal to settle a claim can give rise to a contract cause of action.").

Thus, by invoking a breach of the common law duty of good faith and fair dealing, Plaintiff has properly put the claims handling procedures at issue in this case, even though she did not also bring a bad faith action. The cases that Defendant cites do not establish the contrary. In the federal cases that Defendant cites (which are most persuasive to this U.S. District Court operating under the Federal Rules of Civil Procedure), there is little-to-no indication that the common law duty of good faith and fair dealing was ever put at issue; it appears instead that the cases focused on the respective plaintiffs' rights only under the terms of their policies. If this Court were faced with a similar Complaint, which only alleged entitlement to benefits under the clear provisions of the Plaintiff's policy, then it might well conclude that discovering elements of the Defendant's claims adjuster's investigation were not "reasonably calculated to lead to the discovery of admissible evidence." But under the actual allegations of the Complaint before us, the Court finds sufficient allegations to make such lines of inquiry relevant.

### b. *Limitations on Allowing the Deposition to Proceed*

It is important to note that, in allowing the deposition to proceed, the Court is not ordering the discovery of any privileged materials. Plaintiff has specifically represented that she only intends to inquire as to "the factual details of Allstate's investigation and evaluation of Ms. Rau's claim." (Doc. 24 at 1.) Insofar as she limits her questioning to these factual details, the Court will allow the deposition to proceed. However, insofar as she intends to venture beyond these factual details and seek information concerning Defendant's work product made in anticipation of litigation, she goes beyond the scope of discovery permitted by this Order. Attempts to discover this type of work product are governed by Federal Rule of Civil Procedure 26(b)(3) and require a separate and more stringent showing of necessity that remains unestablished in the briefs presently before us.

This Court had occasion to explain the law governing discovery of privileged materials in a recent Opinion. It held:

> The Federal Rules of Civil Procedure provide as follows in regards to work-product privilege:
>
>> *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>>
>> (i)     they are otherwise discoverable under Rule 26(b)(1); and

> (ii)     the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A). However, "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* at 26(b)(3)(B). By this language, "Rule 26(b)(3) provides that, even if the party seeking discovery of information otherwise protected by the work product doctrine has made the requisite showing of need and undue hardship, courts must still protect against the disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and his agents." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003).

> Stated differently, Rule 26(b)(3) establishes two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, "core" or "opinion" work product that encompasses the "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation" is "generally afforded near absolute protection from discovery." Thus, core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances.

*Id.* (quoting Fed. R. Civ. P. 26(b)(3); *In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997)).

> As to the first tier, a "document is considered to be prepared 'in anticipation of litigation [when] in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 277 (W.D. Pa. 2014) (quoting *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)).

> The doctrine of work-product immunity shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. A party claiming work-product immunity

bears the burden of showing that the materials in question were prepared in the course of preparation for possible litigation.

*Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000) (internal quotation marks and citations omitted). "If the party asserting the privilege bears its burden of proof, the party seeking production may obtain discovery" only upon a showing that it has complied with the criteria of Federal Rule 26(b)(3). *Id.*

"Core opinion" work product, on the other hand, "includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985). These items are "accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases." *Id.* While the rule against disclosure of core opinion work product is subject to some exceptions,

> the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.

*Hickman v. Taylor*, 329 U.S. 495, 512, 67 S. Ct. 385, 394, 91 L. Ed. 451 (1947).

Finally, to the extent that Plaintiff seeks discovery of material subject to attorney-client privilege, and not merely the work product governed by Federal Rule 26, this Court applies Pennsylvania law. *See* Fed. R. Evid. 501; *United Coal Cos. V. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988). Pennsylvania has codified the law of attorney-client privilege as follows: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa. Cons. Stat. Ann. § 5928. "In addition to confidential communications which flow from a client to his or her attorney . . . the attorney-client privilege applies to confidential communications which flow

from an attorney to his or her client to the extent the communications are based upon confidential facts that the client disclosed initially to the attorney." *Slusaw v. Hoffman*, 861 A.2d 269, 273 (Pa. Super. Ct. 2004). "The attorney-client privilege has deep historical roots and indeed is the oldest of the privileges for confidential communications in common law." *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1263 (Pa. Super. Ct. 2007) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed. 2d 584 (1981)).

*Lane v. State Farm Mut. Auto. Ins. Co.*, Civ. No. 14-1045, 2015 WL 2380009, at *1-2 (M.D. Pa. May 18, 2015). While the Court takes no position on whether a showing of need for certain privileged materials is possible at some later stage of the proceedings, it is sufficient for present purposes to note that no such showing has been made out yet and, therefore, Plaintiff's deposition questioning can only be limited to the factual details discussed above.

Finally, because this discovery dispute was presented to the Court before the deposition was ever conducted, the issues before us were necessarily framed in the broadest and most general fashion. Accordingly, this Court has only been able to rule on the permissibility of the deposition in the abstract, without knowing the specific questions that will be posed. While the Court believes that its Opinion is correct and clear, the parties should recognize that the Opinion speaks only in general terms and therefore does not eliminate the possibility that future disputes may arise during the deposition when Plaintiff's questions are actually posed. Plaintiff's counsel must understand that she treads a narrow path between asking the types of factual questions that are permitted by this Opinion and venturing into questions regarding work product, which are not.

## IV.   Conclusion

For the foregoing reasons, the Court will allow the deposition of Allstate's claims

adjuster to proceed. A separate Order follows.

Robert D. Mariani
United States District Judge